UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JERROLD EUGENE DUBOSE, | |
| Plaintiff, | |
| -against- | 26-CV-1005 (LTS) |
| CITY OF NEW YORK, MAYOR LEROY ADAMS, APPLE INC., SNIPES, FAMILY DOLLAR, 75TH PRECINCT, | TRANSFER ORDER |
| Defendants. | |

LAURA TAYLOR SWAIN, Chief United States District Judge:

Plaintiff brings this *pro se* action asserting various causes of action, including some sounding in fraud. He alleges that the events giving rise to his claims occurred in Brooklyn, New York. Named as Defendants are the City of New York, former Mayor Eric Adams (sued here as Mayor Leroy Adams), Apple, Inc., Snipes, Family Dollar, and the 75th Precinct of the New York Police Department. For the following reasons, the Court transfers this action under 28 U.S.C. § 1404 to the United States District Court for the Eastern District of New York.

## BACKGROUND[1]

Plaintiff pleads that his claims arise from events that occurred in Brooklyn, New York, in October 2025 and January 2026. (Compl., ECF No. 1 at 3.) Plaintiff seeks $1 million in damages for the following. (*Id.* at 14.)

In or around October 2025, Plaintiff purchased clothing from Snipes at 520 Fulton Street, Brooklyn, New York 11201, using a Netspend card. (*Id.* at 7.) Plaintiff later learned that the card was charged twice, so he returned to Snipes with the receipt. (*Id.* at 7-8.) The Snipes manager

---

[1] The Court quotes from the complaint verbatim. All spelling, grammar, and punctuation are as in the original unless noted otherwise.

"refused" to refund Plaintiff the overcharged amount, despite Plaintiff's having the receipt and his bank statement available on his phone. (*Id.* at 8.) Plaintiff contacted law enforcement to "mediate the situation" but "nobody showed up for 2 hours" and "couldn't get no assistance whatsoever." (*Id.*) These events give rise to Plaintiff's claims for "deceptive business practices, emotional distress, and theft of service, robbery, fraud [and] undue harm." (*Id.* at 8-9.) Plaintiff also asserts a claim of "dereliction of duty" for the 911 dispatcher's failure to assist Plaintiff. (*Id.* at 9.)

Also, in or around October 2025, Plaintiff was arrested; 24 hours after his arrest, Plaintiff was given nothing to eat or drink and was suffering from dehydration. (*Id.* at 13.) [2] The sink was broken, so Plaintiff was subjected to drinking toilet water." (*Id.*)

Finally, on or around January 26, 2026, Plaintiff went to Family Dollar at 130 New Lots Avenue, Brooklyn, New York 11212 to buy an Apple gift card worth $350. (*Id.* at 9.) Plaintiff tried to pay with his debit card, but the cashier "adamantly refused" and instead ordered Plaintiff to pay for the gift card in cash. (*Id.*) Plaintiff gave the cashier $360, and the cashier gave Plaintiff $10. (*Id.*) Plaintiff traveled up the block to Dollar Tree, where he sent the Apple gift "card information to [his] loved ones to catch a flight to JFK International." (*Id.* at 10.) Plaintiff later found out that the Family Dollar "male cashier with a co-sign by the manager didn't put the money on the Apple card." (*Id.*)

Plaintiff sues Family Dollar for its policy of forcing customers "to pay cash for gift cards that are often defective and fraudulent" and "causing undue harm by not allowing customers to dispute the transaction on their debit card." (*Id.* at 12.) Plaintiff alleges that "Apple support . . .

---

[2] Plaintiff does not specify which defendant is associated with this claim; therefore, the Court construes this claim as associated with the 75th Precinct.

flagged the card + transaction as fraudulent and instructed [Plaintiff] to seek out law enforcement." (*Id.* at 10.) Plaintiff waited "in the cold for 2 hours, while 3 patrol cars passed by." (*Id.*) Plaintiff called 911 four times between 6:00 pm and 8:00 pm to no avail. (*Id.* at 11.) Plaintiff further alleges that since 2020, Apple has "robb[ed]" him of thousands by selling defective Apple gift cards. (*Id.* at 13.)

**DISCUSSION**

Under 28 U.S.C. § 1391(b), a civil action may be brought in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Under Section 1391(c), a "natural person" resides in the district where the person is domiciled, and an "entity with the capacity to sue and be sued" resides in any judicial district where it is subject to personal jurisdiction with respect to the civil action in question. *See* 28 U.S.C. § 1391(c)(1), (2).

In this case, Plaintiff does not plead the residences of Defendants; the alleged events, however, occurred in Kings County, which falls within the Eastern District of New York, *see* 28 U.S.C. § 112. Because Plaintiff does not plead Mayor Adams's current address and does not plead that all Defendants reside in New York, it is unclear whether venue is proper under Section 1391(b)(1) in either this District or any district in New York. Even if the Court did assume that Defendants reside in this District and that venue is proper here under Section 1391(b)(1), because the events giving rise to Plaintiff's claims occurred in Brooklyn, venue would also be proper under Section 1391(b)(2) in the Eastern District of New York.

Under 28 U.S.C. § 1404(a), even if a case is filed in a jurisdiction where venue is proper,

3

a court may transfer the case to any other district where it might have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). In determining whether transfer is appropriate, courts consider the following ten factors: (1) the convenience of witnesses; (2) the convenience of the parties; (3) the locus of operative facts; (4) the availability of process to compel the attendance of the unwilling witnesses; (5) the location of relevant documents and the relative ease of access to sources of proof; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded to the plaintiff's choice of forum; (9) trial efficiency; and (10) the interest of justice, based on the totality of circumstances. *Keitt v. N.Y. City*, 882 F. Supp. 2d 412, 459-60 (S.D.N.Y. 2011); *see also N.Y. Marine and Gen. Ins. Co. v. LaFarge No. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (setting forth similar factors).

Under Section 1404(a), transfer appears to be appropriate in this case. The underlying events occurred in Brooklyn, where Plaintiff resides, and it is reasonable to expect that all relevant documents and witnesses are also in Brooklyn. The Eastern District of New York appears to be a more convenient forum for this action. Accordingly, the Court transfers this action to the United States District Court for the Eastern District of New York. 28 U.S.C. § 1404(a); *see D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006) ("District courts have broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis.").

## CONCLUSION

The Clerk of Court is directed to transfer this action to the United States District Court for the Eastern District of New York. Whether Plaintiff should be permitted to proceed further without prepayment of fees is a determination to be made by the transferee court. Summonses shall not issue from this Court. This order closes this case.

The Court certifies, pursuant to 28 U.S.C § 1915(a)(3), that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:    March 18, 2026
            New York, New York

_____
                                    **/s/Laura Taylor Swain**
                                    LAURA TAYLOR SWAIN
                                    Chief United States District Judge

5